WILSON E. FIELD ET AL., APPELLANTS, v. CITY OF LINCOLN ET AL., APPELLEES.

FILED JANUARY 20, 1910.   No. 15,892.

Adverse Possession: EVIDENCE. Plaintiffs and their grantors cultivated a portion of Q street in front of their lots in the city of Lincoln from about the year 1876 to 1880. In 1878 the mayor and council of the city enacted an ordinance permitting the fencing of a portion of the streets for the protection of trees planted thereon. In 1880 plaintiffs constructed a fence in the street outside of trees planted and growing thereon, and maintained the fence until the commencement of this suit in 1908. In 1906 the city council, in pursuance of the provisions of the ordinance, passed a resolution directing the removal of the fence, and the city officers were about to proceed to carry out the directions when they were enjoined by plaintiffs in this action on the ground that their possession of the property was adverse during their occupancy and their title thereto was perfected by limitation. *Held,* First, that the mere cultivation of the strip of ground in front of the lots and in the street did not constitute adverse, exclusive and hostile possession, such as would set the statute in motion; and, second, that the fencing of the strip for the protection of the trees growing thereon was permissive, and not adverse.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*Burkett, Wilson & Brown,* for appellants.

*C. C. Flansburg, John M. Stewart* and *T. F. A. Williams, contra.*

REESE, C. J.

This is an action against the city of Lincoln and its officers, the street commissioner and his assistant, to enjoin them from removing certain fences claimed by the city to be in the street, and to quiet the title of plaintiffs in the property inclosed. The petition alleges title by adverse possession, and it is not claimed that plaintiffs hold the land by any grant or paper title. It is unquestionably true that the strip or portion of land lies in front of plaintiffs' lots outside the lot line and is a part of the street, unless the right of the city to cause the street to be opened its full width has been lost by the inclosure of plaintiffs and adverse holding by them for the statutory period. It is alleged that plaintiffs, Fields, became the owner of the lots abutting on the street in the year 1880, and which were lots 9, 10, 11 and 12, in block 3, of Kinney's O street addition to the city, and that they sold lots 11 and 12 to plaintiff Fossler in the year 1903. It is also alleged that the Fields became the owners of lots 7 and 8, in the same block, in 1879; that prior to the purchase by the Fields the then owners were, and for some time prior thereto had been, in adverse possession of the property in dispute; that such possession had been maintained from the date of purchase to the time of the commencement of the suit; that defendants were threatening to remove the said fences and open the street to the full width, and thereby interfere with and interrupt plaintiffs' possession. The defendants answered, denying the averments of the petition as to the adverse possession, and set up the passage of an ordinance of the city passed and ap-

proved on the 31st day of December, 1878, by which lot owners were permitted to plant trees in two rows, the outside row to be twenty feet from and outside the lot line, the inside row to be not more than two feet from and outside said line, and permitting the space to be fenced for the protection of the trees, such fence to be constructed not more than six feet from the outside row of trees. The ordinance reserved the right to order the removal of the fences at any time the council might deem the same advisable. Said ordinance remained in force until October 31, 1889, when a new ordinance was enacted similar to the former one, except that the directions for planting trees were more specific with reference to the distance the trees should be planted from the curb line, their cultivation, etc., and continued the right to maintain fences for their protection. The ordinance also gave the right to cultivate the portion of the street inclosed by the fences for two years, and thereafter plant grass seed therein. It is alleged that whatever occupancy of the street was enjoyed or had by plaintiffs and their grantors had been by the permission of the city under said ordinances; that the same was not adverse to its rights to cause the fences to be removed and the street opened its full width; that plaintiffs acquired no right or title to the property as against the city, and never at any time claimed or asserted such rights until on or about the 9th day of July, 1906; that on said day, in pursuance of the powers reserved by the ordinances above referred to, the city council duly passed a resolution ordering the removal of the fence; that the defendants, the officers enjoined, were intending to remove the same, but without in any way encroaching upon plaintiffs' real estate as described by said lots. It is also alleged that Q street, upon which the lots abut, was and is the width of 100 feet. The prayer of the answer is that plaintiffs' petition be dismissed. The reply consisted of some unimportant admissions, and denied all other averments of the answer. A trial was had in the district court, which resulted in a finding and decree in

favor of defendants and a dismissal of plaintiffs' petition. Plaintiffs appeal.

During the trial the existence of the ordinances was admitted, and they were introduced in evidence. They are preserved in the bill of exceptions and are of the tenor and effect as above stated, and therefore need not be copied here. From a perusal of the bill of exceptions, it appears that the strip or portion of the street involved in this suit was not fenced until after the passage of the ordinance, and, if such adverse possession as would ripen into a title had not been exercised prior to the passage of such ordinance and construction of the fence, the possession will have to be held as permissive only, and not adverse. The evidence is clear, both from the testimony of plaintiffs and other witnesses, that prior to the year 1880 the strip had not been inclosed, and that when the fence was built it was for the protection of the trees, which was permitted by the ordinance of 1878. It is very doubtful if the mere cultivation of such a portion of the street without inclosing it, or in some way excluding the public, could ripen into a title. In Elliott, Roads and Streets (2d ed.) sec. 883, after a somewhat lengthy discussion of the question of the barring of rights of the public by statute of limitations or adverse possession, the author, at the close of the section, says: "Even if title to a highway may be acquired by adverse possession, it is not every encroachment thereon that constitutes such possession. Setting out shade trees, making a sidewalk, fencing in a portion of the way, and the like, have been held insufficient to establish a claim by adverse possession"—citing cases from New York, California, Indiana, Michigan, Texas, Massachusetts, Wisconsin, Missouri, Iowa, Illinois and Minnesota. While this is not adopted in this state in all its parts, yet we think it is clear that to divest the public of its highways the rules governing adverse possession should be held strictly against the disseizor, and his right, if established at all, should be based upon clear proof of adverse holding for the full statutory period, and the

mere plowing and cultivation of a part of the public street in a city, without other acts or the demonstration of a purpose to hold adversely and as owner, would not set the statute in motion. But, if we are wrong in this, it is manifest that the statute had not run at the time of the construction of the fences "for the protection of the trees," as testified to, within the provision of the then existing ordinance, and could not perpetuate the adverse quality of the possession. Even if it were shown that plaintiffs and their grantors had been in exclusive possession of the strip of land prior to the passage of the ordinance in question, claiming the same "as owners," and with all the essential qualities of "adverse possession," yet no right could have been asserted as against the city, owing to the lack of the statutory time, and the passage of the ordinance and the subsequent inclosure of the land for the very purpose thereby permitted would not continue the adverse quality of the possession, and the statute would cease to run. As in the case of *Ryan v. City of Lincoln, ante,* p. 539, the plaintiffs have testified with commendable frankness as to their purpose in inclosing the ground. There seems to be little, if any, doubt but that their holdings were permissive, and that the statute did not run in their favor.

The judgment of the district court is

AFFIRMED.